IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TRUINJECT CORP., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No: 19-592 (LPS) (JLH) |
| ) | |
| GALDERMA, S.A., GALDERMA ) | JURY TRIAL DEMANDED |
| LABORATORIES, L.P., and NESTLÉ SKIN ) | |
| HEALTH, INC., ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTIONS TO THE REPORT AND RECOMMENDATION ON PLAINTIFF'S <u>MOTION FOR LEAVE TO AMEND THE COMPLAINT</u>**

OF COUNSEL:

Michael C. Wilson
Jenny L. Martinez
William A. Munck
Zachary B. Tobolowsky
Charles-Theodore Zerner
Sarah J. Lopano
MUNCK WILSON MANDALA, LLP
600 Banner Place Tower
12770 Coit Road
Dallas, TX  75251
(972) 628-3600

October 15, 2021

MORRIS, NICHOLS, ARSHT &TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com

*Attorneys for Defendants Galderma, S.A., Galderma Laboratories, L.P., and SHDS, Inc. (f/k/a Nestlé Skin Health, Inc.)*

Pursuant to Federal Rule of Civil Procedure 72, District of Delaware Local Rule 7.1.5(b), and the Standing Order for Objections Filed Under Federal Rule of Civil Procedure 72, Defendants file this Response to Plaintiff Truinject Corp.'s ("Truinject") Objections (D.I. 360) to the Memorandum Order entered by Judge Jennifer L. Hall on September 24, 2021 (D.I. 358).

## I.  INTRODUCTION

Truinject chose not to assert or seek leave to add the disputed claims until 17 months after the Court's (agreed) deadline. Even if Truinject had concerns that certain claims would expire *in June 2020*, that does not justify it ignoring the Court's *March 2020* order expressly requiring Truinject to seek leave if it wanted to add new claims. Truinject had several months to seek leave or request an extension of the amendment deadline. Instead, Truinject attempted to circumvent this Court's orders by filing a completely duplicative suit in Texas and subsequently seeking to consolidate it with the present action. Allowing Truinject to amend the complaint now (more than three years after the case began) would reward Truinject's improper effort to flout this Court's orders while unduly delaying and unreasonably multiplying this litigation.

## I.  PROCEDURAL BACKGROUND[1]

The relevant background and procedural history of this litigation (regarding both this Delaware Suit and the Texas Suit) are summarized in the parties' Joint Status Report filed in C.A. No. 20-1675, D.I. 87, and Defendants' Answering Letter Brief in Response to Truinject's Motion for Leave to Amend (D.I. 301). For the Court's convenience, below are the parties and claims from the transferred Texas Suit for which Judge Hall denied leave to add to this suit (the "Denied

---

[1] The background and procedural history of this litigation as of January 2020 are summarized in the Reports and Recommendations previously issued by this Court. *See* D.I. 169 and 178.

1

Claims").[2] Truinject only objects to Judge Hall's ruling on the claims designated in **bold**:

- Nestlé Skin Health, Inc. (n/k/a SHDS, Inc.) ("NSH, Inc."): Breach of 2/7/17 CDA and 2/18/16 CDA; **Attempted Monopolization**; **Cal. Cartwright Act**.

- Galderma, S.A.: **Attempted Monopolization**; **Cal. Cartwright Act**.

- Galderma Laboratories, L.P. ("Galderma Labs"): Breach of 2014 ENA; **Attempted Monopolization**; **Cal. Cartwright Act**.[3]

- 14 Individual Defendants: Trade Secret Misappropriation (DTSA & DUTSA); Unfair Competition.

- Nestlé Skin Health, S.A. (n/k/a Galderma Holding, S.A.) ("NSH S.A."): **Breach of 2/7/17 CDA and 2/18/16 CDA; Patent Infringement; Trade Secret Misappropriation (DTSA & DUTSA); Trade Dress Infringement; Delaware DTPA; Unfair Competition; Attempted Monopolization; Cal. Cartwright Act**.

Because Truinject does not object to Judge Hall's ruling denying leave to amend to add claims against the Individual Defendants, Truinject has waived any such objections.[4]

## II.     ARGUMENT AND AUTHORITIES

A district judge reviews a magistrate judge's decision on dispositive motions de novo and non-dispositive motions under a clearly erroneous standard.[5] Denial of a motion to amend a complaint in one action is a final judgment on the merits barring the same complaint in a later action.[6] Thus, Defendants contend that Judge Hall's Memorandum Order on the Denied Claims is a final judgment, and that Truinject is barred from asserting these claims in the second-filed suit (C.A. No. 20-1675). To the extent the Court agrees that the ruling on the Denied Claims is

---

[2] Judge Hall granted leave to amend patent infringement and trade dress infringement claims against Galderma, S.A., and Galderma Laboratories, L.P. ("Granted Claims").

[3] Galderma S.A., Galderma Labs, and NSH, Inc. are collectively referred to herein as the "Delaware Defendants".

[4] *Masimo Corp. v. Philips Elec. N. Am. Corp.*, 62 F. Supp. 3d 368, 374 (D. Del. 2014).

[5] Fed. R. Civ. P. 72(a) & (b)(3); *Kenny v. U.S.*, 489 F. App'x 628, 630 n.2 (3d Cir. 2012).

[6] *McKenna v. City of Philadelphia*, 304 F. App'x 89, 93 (3d Cir. 2008); *see also* D.I. 87 at 12-13.

2

dispositive, it is subject to de novo review. Under either standard of review, the Memorandum Order should be adopted in all respects.

### A. Judge Hall correctly denied Truinject's request for leave to amend.

A party seeking to amend its pleading or add new parties after the amendment deadline must meet Rule 16(b)(4)'s "rigorous" good cause standard.[7] "[I]n such instances, the lenient Fed. R. Civ. P. 15(a)(2) standard . . . yields to the good cause requirement."[8] The good cause standard "hinges on diligence of the movant" and requires the movant to show the deadline "cannot reasonably be met despite [its] diligence,"[9] or the "claims could not have been reasonably sought in a timely manner."[10] A party lacks good cause if it "possessed the required information and yet substantially delayed filing a motion to amend."[11] Failure to show good cause under Rule 16 ends the inquiry.[12] But even if there is good cause, the court may still deny leave under Rule 15(a).

Under Rule 15(a), a party may amend its pleading with the court's leave.[13] "[U]ndue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the . . . amendment, [and] futility of the amendment" support denial of leave to amend.[14] As to the passage

---

[7] *Carrier Corp. v. Goodman Glob., Inc.*, 49 F. Supp. 3d 430, 433 (D. Del. 2014); *Premier Comp. Sols., LLC v. UPMC*, 970 F.3d 316, 319 (3d Cir. 2020).

[8] *Lee v. Park*, 720 F. App'x 663, 669 (3d Cir. 2017); *Genentech, Inc. v. Amgen Inc.*, No. 17-1407-CFC, Consol., 2020 WL 708113, at *1 (D. Del. Feb. 12, 2020).

[9] *Scott v. Vantage Corp.*, 336 F. Supp. 3d 366, 372 (D. Del. 2018).

[10] *Paoli v. Stetser*, No. 12-66-GMS-CJB, 2013 WL 2154393, at *2 (D. Del. May 16, 2013).

[11] *Dasso Int'l, Inc. v. MOSO N. Am., Inc.*, No. 17-1574-RGA, 2020 WL 6286768, at *3 (D. Del. Oct. 27, 2020); *see also Paoli*, 2013 WL 2154393, at *2, 6; *Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, No. 15-1168-LPS, 2017 WL 3888228, at *4 (D. Del. Sept. 6, 2017).

[12] *Dasso*, 2020 WL 6286768, at *4.

[13] FED. R. CIV. P. 15(a)(2).

[14] *Magsil Corp. v. Seagate Tech.*, No. 08-940, 2010 WL 2710472, at *1 (D. Del. July 7, 2010).

of time, "[d]elay may become undue when a movant has had previous opportunities to amend a complaint."[15] Courts evaluate delay based on the time between the deadline to amend and the filing of the motion for leave, not the date of a second suit.[16] Denying leave is also proper based on delay coupled with an unwarranted burden on the court or undue prejudice to the other party.[17]

An amendment is prejudicial if it "[p]laces an unfair burden on the opposing party," and in making this evaluation, courts consider, among other things, whether an amendment "would result in additional discovery, cost, and preparation to defend against new facts or new theories."[18]

### 1. Judge Hall correctly denied leave to add NSH, S.A.

In response to NSH, S.A.'s motion to dismiss for lack of personal jurisdiction,[19] Truinject argued (among other grounds) that Quintin Cassady of Galderma Labs had apparent authority to bind NSH, S.A. to a Confidential Disclosure Agreement ("CDA") that has a Delaware forum selection clause.[20] Truinject based its theory of apparent authority on the fact that Peter Nicholson, whose email signature block identified NSH, S.A., forwarded the CDA to Truinject after Cassady signed it.[21] Judge Hall rejected this theory because: (1) the uncontroverted evidence confirmed Nicholson did not work for NSH, S.A. at the time; and (2) in any event, there are "no allegations or evidence that Nicholson made any manifestations regarding Galderma Labs' authority to bind

---

[15] *Cureton v. NCAA*, 252 F.3d 267, 273 (3d Cir. 2001) (citing *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993); *Rolo v. City Investing Co.*, 155 F.3d 644, 654-55 (3d Cir. 1998)).

[16] *Acosta v. Holland Acquisitions, Inc.*, 2:15-cv-1094, 2018 WL 2230895, at *5 (W.D. Pa. May 16, 2018).

[17] *Cureton*, 252 F.3d at 273 (citing *Adams v. Gould Inc.*, 739 F.2d 858, 868 (3d Cir. 1984)).

[18] *Id.* (collecting cases); *Luciani v. City of Philadelphia*, 643 F. App'x 109, 111-12 (3d Cir. 2016).

[19] D.I. 123.

[20] D.I. 152 at 9–10.

[21] D.I. 153 ¶¶ 10, 15.

4

[NSH], S.A."[22] This Court adopted Judge Hall's Report and Recommendation.[23]

Truinject claims certain *unspecified* documents from the May 2020 production show that when Nicholson "directed the signing of the February 2016 CDA," his employees understood that he was an officer of NSH, S.A. and they understood that he gave Galderma Labs authority to bind NSH, S.A.[24] But *Truinject had this information prior to the amendment deadline*. The information can be found in "press releases that were *in Truinject's file* from 2014."[25] Further, Truinject alleged these same facts and theories prior to the amendment deadline (and prior to May 2020).[26] For example, Truinject's response to NSH, S.A.'s motion to dismiss (which predated the deadline to amend) asserted that Nicholson sent an executed copy of the CDA to Truinject on February 24, 2016.[27] Because Truinject has not met its burden to show new information justifying its delay, the Court correctly found Truinject was not diligent in asserting its claims against NSH S.A.

Even assuming *arguendo* Truinject discovered new information in May 2020, Truinject cannot justify (1) its failure to seek reconsideration of the Court's jurisdictional determination, or (2) the year-long delay between its alleged discovery and seeking leave in April 2021.[28] Truinject claims it filed the Texas Suit to preserve its claims.[29] But, as Judge Hall correctly noted, Truinject's

---

[22] D.I. 169 at 19 n.7.

[23] D.I. 193 at 4.

[24] D.I. 360 at 3; C.A. No. 19-592 & C.A. No. 20-1675, Sept. 14, 2021 Hearing Trans. ("Trans.") 20:15-21:16.

[25] D.I. 202 at 4 (emphasis added); Trans. at 44:10-18.

[26] *See* D.I. 152 at 3 ("Cassady, . . . [of] Galderma Labs, signed the CDA," then "Nicholson of [NSH] S.A. sent Truinject the executed CDA."), 9; D.I. 175 at 2, 8-10; D.I. 204 ¶¶ 18, 24, p.16, § II.E.1., ¶¶ 46, 67-72, 216, 261, 523; D.I. 202, Ex. 1 (stating the TX Suit would include claims against NSH, S.A.).

[27] D.I. 153 at ¶ 10; *see also* D.I. 169 at 19 n.7; Trans. at 43:16-44:1; D.I. 204 ¶ 46.

[28] Trans. at 16:13-17:20.

[29] Trans. at 21:17-23:2. Truinject's concern about the purported limitations period does not justify its circumvention of the Court's order and the rules governing amendment. *See Nasuti v. Whole Foods Mkt.*, 783 F. App'x 797, 779 (10th Cir. 2019).

5

argument was that NSH S.A. was subject to jurisdiction in Delaware (which undermines Truinject's position that it had to file suit in Texas).[30] If Truinject wants to challenge the Court's jurisdictional ruling, its proper recourse was to seek reconsideration of the dismissal order, not to file a new duplicative suit in another jurisdiction. Truinject has failed to show that it pursued the claims against NSH S.A. in a timely manner. Judge Hall correctly denied leave to add NSH, S.A.[31]

With respect to its breach of contract claims against NSH S.A., Truinject argues that the Court should apply the "same discretionary standard" that Judge Hall applied for the Granted Claims.[32] But Judge Hall correctly applied the standards set forth in Rules 15 and 16.[33] She allowed the Granted Claims because she found *no prejudice to Defendants*, as the Galderma entities are already Defendants in the Delaware Suit and the Delaware Suit already involves similar patent and trade dress claims against NSH, Inc.[34] In contrast, Judge Hall correctly found that Truinject did not show good cause to add breach of contract claims (or any other claims) against NSH S.A.[35]

Importantly, Truinject did not seek reconsideration of the Court's jurisdictional ruling based on the alleged new information. Instead, it filed the duplicative Texas suit. As Judge Hall correctly held, "[h]ad Truinject wanted to make that argument to this Court, the time to do so was back when it allegedly found the new information [in 2020]."[36] Truinject failed to act diligently, and Judge Hall correctly denied Truinject leave to add its proposed claims against NSH S.A.

---

[30] Trans. at 21:17-24.

[31] *See* 2013 WL 2154393, at *2.

[32] D.I. 360 at 4.

[33] Trans. at 11:16-13:13, 40:13-42:5.

[34] Trans. at 40:13-42:5.

[35] Trans. at 18:20-19:2; D.I. 358 at 6–7.

[36] D.I. 358 at 5-6.

### 2. Judge Hall correctly denied leave to add the antitrust claims.

Truinject argues "Judge Hall incorrectly held that Truinject did not act diligently because it had notice of the underlying facts giving rise to potential antitrust claims in 2018."[37] Truinject, however, does not deny it had knowledge of these underlying facts in 2018. Instead, Truinject claims that having notice of facts giving rise to a claim "is insufficient under decisional law and Rule 11 to bring a claim."[38] However, the only "decisional law" cited by Truinject discussing antitrust pleading requirements is *Queen City Pizza, Inc.*, and that case in no way authorizes a plaintiff with notice of facts giving rise to an antitrust claim to wait over two years to assert that claim.[39]

Truinject argues it could not identify the relevant market, and thus properly plead its antitrust claim, until after November 25, 2019, when Defendants produced documents showing *Defendants* viewed facial injection technology as its own market.[40] This argument is flawed for several reasons. First, "[a] properly defined relevant market '*must correspond to the commercial realities of the industry*'"[41]—the market is *not* defined by a defendant's subjective opinions.[42] And nothing prevented Truinject from hiring an antitrust expert to define the market when it received notice of the facts giving rise to its claims.

Second, since at least 2018, Truinject's allegations against Defendants have identified an alleged injection training technology market. In its *Original* Complaint, Truinject alleged that injection training technology was a "lucrative market" and Defendants "wanted to gain an

---

[37] D.I. 360 at 5-6.

[38] *Id.* at 6.

[39] *Id.* (citing *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 435 (3d Cir. 1997)).

[40] D.I. 360 at 5.

[41] *United States v. Sabre Corp.*, 452 F. Supp. 3d 97, 135 (D. Del. 2020) (citing *Amex, Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2285 (2018)).

[42] *Queen City Pizza*, 124 F.3d at 436. Judge Hall raised this point during the September 14 hearing. *See* Trans. at 30:13-14.

advantage over its competitors in the *training market*."[43] The FAC alleged that Defendants' plan was to gain control over the injection training technology market to the detriment of competitors.[44] These allegations confirm Truinject had sufficient information to assert these claims years ago.

Third, even after supposedly learning Defendants' "likely view" of the FITT market in 2019, Truinject waited another four months to hire an antitrust expert and seventeen months to seek leave to add its antitrust claims.[45] Thus, even accepting that Truinject received necessary information in 2019, Truinject still failed to act diligently to amend it claims. Thus, Judge Hall correctly found Truinject lacked good cause, and properly denied leave, to add the antitrust claims.

### 3. Defendants will be unfairly prejudiced by the proposed amendment.

Truinject argues that its proposed amendments will not prejudice Defendants because it notified Defendants of its proposed claims in April 2020.[46] This purported "notification" does not negate the fact that adding the proposed claims would (1) significantly broaden the case;[47] (2) further delay this already drawn-out litigation and require an extension of the current discovery cut-off (which has already been extended many times[48]); (3) require the parties to reexamine and significantly expand all aspects of discovery, including third-party discovery; and (4) require new

---

[43] D.I. 1 at ¶¶ 21, 97, 113; *see also* D.I. 112 at ¶¶ 22, 125, 292.

[44] D.I. 112 at ¶¶ 97, 556-57.

[45] *See* Trans. at 33:1-3 ("But in any event, we found an expert . . . in March [of 2020]"); D.I. 293. Truinject alleges it was "not on notice of existing market" until it interviewed experts and obtained a draft expert report. *See* D.I. 360 at 6. Truinject cites no authority that excuses an untimely antitrust claim based upon an attorney's delay in researching the claim or consulting an expert

[46] D.I. 360 at 7. Notably, this negates Truinject's assertion that its proposed claims are based on Defendants' *May 2020* production and confirms it waited over a year to seek to add the claims.

[47] *Synthes, Inc. v. Emerge Med., Inc.*, No. 11-1566, 2012 WL 4473228, at *19 (E.D. Pa. Sept. 28, 2012) (noting it is "widely recognized that antitrust claims are among the most complex cases to litigate").

[48] *See* D.I. 63 at 17; D.I. 167 at 16; D.I. 246 at Ex. A; D.I. 288 at 1.

legal strategies and defenses.[49] Truinject does not address, much less rebut, the Delaware case law supporting Judge Hall's finding that the proposed expansion of claims and parties *three years into this litigation* would place an undue burden on the Court and unduly prejudice the Delaware Defendants and NSH S.A. (which the Court has already determined it does not have jurisdiction over).[50] Truinject has known of the factual bases for these claims since well before the amendment deadline. It is improper to inject them into the case now.[51]

### B. Judge Hall correctly denied Truinject's motion to compel all personnel files.

Truinject cites no authority refuting that courts in this circuit regularly limit discovery of employee records and rarely, if ever, order the production of *entire* personnel files. Given "the strong public policy against disclosure" of personnel files, courts impose a "heightened standard" that requires showing a "particularized need."[52] Because such files contain sensitive information that is often irrelevant, "discovery of them should be limited."[53] Thus, a party is not "entitled to the entire personnel records . . . without a more particularized showing of relevance."[54]

The six requests for production ("RFPs") that Truinject identifies are overbroad, unduly

---

[49] Trans. at 52:21-54:3; *see Cureton*, 252 F.3d at 274; *Acosta*, 2018 WL 2230895, at *7-8 (finding prejudice where "just about everything" would have to be redone following amendment).

[50] *See Luciani*, 643 F. App'x at 111-12; *CMR D.N. Corp. v. City of Philadelphia*, 703 F.3d 612, 630 (3d Cir. 2013).

[51] *Cureton*, 252 F.3d at 273; *Berger v. Edgewater Steel Co.*, 911 F.2d 911, 924 (3d Cir. 1990); *Carrier*, 49 F. Supp. 3d at 433-34; *Race Tires*, 614 F.3d at 85.

[52] *Lawson v. Love's Travel Stops & Country Stores, Inc.*, No. 1:17-CV-1266, 2020 WL 94078, at *3 (M.D. Pa. Jan. 8, 2020) (quoting *Stephens v. State Farm*, No. 1:14-CV-160, 2015 WL 1638516, at *5 (M.D. Pa. Apr. 13, 2015) (collecting cases)).

[53] *Harris v. Harley-Davidson*, No. 09-1449, 2010 WL 4683776, *5 (M.D. Pa Nov. 10, 2010) (citing *Reagan-Touhy v. Walgreen Co.*, 526 F.3d 641, 648 (10th Cir. 2008); *Miles v. Boeing Co.*, 154 F.R.D. 112, 115 (E.D. Pa. 1994)).

[54] *Harris*, 2010 WL 4683776, *5; *Miles*, 154 F.R.D. at 115; *Lawson*, 2020 WL 94078, at *3; *see also Vasquez v. PA Dep't of Corr.*, No. 1:20-CV-00016, 2021 WL 1600479, at *4 (W.D. Pa. Apr. 23, 2021).

burdensome, and would require Defendants to produce confidential documents that are irrelevant to any issues in this case.[55] Apart from saying it is "not interested in . . . medical or insurance records," Truinject provides no limitations on these requests. Truinject argues that it needs the *entire* personnel files for 16 individuals "to establish which company employed who and what those individuals did."[56] This falls well short of the "particularized showing of relevance" or "particularized need" to overcome the strong presumption against disclosure of personnel records, much less disclosure of *entire* personnel files for sixteen individuals.

Moreover, the arguably relevant information sought may be ascertained through other means.[57] Truinject does not need entire personnel files to discover who certain individuals were employed by and whether they did any work relating to Holly or LucyLive. Truinject can obtain this information through an interrogatory (which it has not served)[58] or through depositions. And as to the accused Holly/LucyLive systems, Defendants have produced thousands of documents that show who worked on those projects and when and how they were involved. For all these reasons, Judge Hall's order that Defendants produce the particular categories of files that she determined to be relevant and proportional to those issues is more than reasonable.[59] The Court should adopt Judge Hall's order.

---

[55] RFPs 68-72 ask for "All documents relating to or referring to [Raetzman, Rogers, McCrea, Lask, and Lopez's] employment by . . . the corporate Defendants"; RFP 93 seeks "documents sufficient to show the employment of" sixteen different individuals. D.I. 341-1 at 119-120, 128-129.

[56] D.I. 360 at 8-9; *see also* D.I. 341 at 1-2.

[57] *Prof. Recovery Servs. v. Gen. Elec.*, No. 06-2829, 2009 WL 137326 at *4 (D.N.J. Jan. 15, 2009).

[58] Truinject attempts to refute this point by referring to Defendants' response to Interrogatory No. 5, but that interrogatory does not ask who certain individuals worked for or what they worked on.

[59] *See, e.g.*, *Apollo v. PA Convention Ctr.*, No. 11-6684, 2013 WL 6795978, at *1 (E.D. Pa. Dec. 23, 2013).

|  |  |
|---|---|
| OF COUNSEL:<br><br>Michael C. Wilson<br>Jenny L. Martinez<br>William A. Munck<br>Zachary B. Tobolowsky<br>Charles-Theodore Zerner<br>Sarah J. Lopano<br>MUNCK WILSON MANDALA, LLP<br>600 Banner Place Tower<br>12770 Coit Road<br>Dallas, TX  75251<br>(972) 628-3600<br><br>October 15, 2021 | MORRIS, NICHOLS, ARSHT &TUNNELL LLP<br><br>*/s/ Jeremy A. Tigan*<br><br>_____<br>Jack B. Blumenfeld (#1014)<br>Jeremy A. Tigan (#5239)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE 19899<br>(302) 658-9200<br>jblumenfeld@morrisnichols.com<br>jtigan@morrisnichols.com<br><br>*Attorneys for Defendants Galderma, S.A., Galderma Laboratories, L.P., and SHDS, Inc. (f/k/a Nestlé Skin Health, Inc.)* |

# CERTIFICATE OF SERVICE

I hereby certify that on October 15, 2021, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on October 15, 2021, upon the following in the manner indicated:

| | |
|---|---|
| David A. Jenkins, Esquire<br>Neal C. Belgam, Esquire<br>Kelly A. Green, Esquire<br>Eve H. Ormerod, Esquire<br>SMITH, KATZENSTEIN & JENKINS LLP<br>1000 West Street, Suite 1501<br>Wilmington, DE 19801<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| Leo R. Beus, Esquire<br>L. Richard Williams, Esquire<br>Megan E. Beus, Esquire<br>Patrick J. McGroder III, Esquire<br>Lynette Balderrama, Esquire<br>Travis Paul Roberts, Esquire<br>David Neal, Esquire<br>Timothy J. Casey, Esquire<br>BEUS GILBERT PLLC<br>701 North 44th Street<br>Phoenix, AZ 85008-6504<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |

*/s/ Jeremy A. Tigan*

Jeremy A. Tigan (#5239)