IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TRUINJECT CORP., | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| v. | ) | |
| | ) | |
| GALDERMA, S.A., GALDERMA | ) | C.A. 1:19-cv-00592-GBW |
| LABORATORIES, L.P., and | ) | |
| NESTLÉ SKIN HEALTH, INC., | ) | **PUBLIC VERSION** |
| | ) | |
| *Defendants*. | ) | |

---

**OPENING BRIEF IN SUPPORT OF DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT NO. 1 ON DAMAGES**

---

OF COUNSEL:

MUNCK WILSON MANDALA, LLP

Michael C. Wilson
Jenny L. Martinez
William A. Munck
Sarah J. Lopano
Chase A. Cobern
Charles T. Zerner
Tri T. Truong
12770 Coit Road, Suite 600
Dallas, Texas 75251
(972) 628-3600

MORRIS, NICHOLS, ARSHT & TUNNELL, LLP
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com

*Attorneys for Defendants*

**Confidential Version Filed: March 8, 2023**
**Public Version Filed: March 16, 2023**

## TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................i

TABLE OF CITATIONS......................................................................................................ii

GLOSSARY .......................................................................................................................... v

CITATIONS KEY ................................................................................................................ vi

I.    NATURE AND STAGE OF THE PROCEEDINGS ................................................. 1

II.   SUMMARY OF ARGUMENT ................................................................................. 1

III.  SUMMARY JUDGMENT STANDARD ................................................................. 2

IV.   TRUINJECT HAS NOT PRESENTED ANY TRIABLE ISSUE OF DAMAGES. .............. 3

      A.   The Allergan Theory Fails As a Matter of Law. ............................................... 3

           1.   The Allergan Theory is barred by the law of the case. ............................... 3

           2.   The Allergan Theory seeks unrecoverable contract damages.................................. 4

           3.   The Allergan Theory bears no causal link to Defendants' alleged conduct............... 6

           4.   The Allergan Theory cannot be proven with reasonable certainty. ........................ 10

      B.   Summary Judgment of No Damages on All Claims is Warranted. ................................ 15

V.    CONCLUSION.................................................................................................... 15

# TABLE OF CITATIONS

**Cases**                                                                 **Page(s)**

*AlphaMed Pharms. Corp. v. Arriva Pharms., Inc.*,
    432 F. Supp. 2d 1319 (S.D. Fla. 2006),
    *aff'd*, 294 F. App'x 501 (11th Cir. 2008)..........................................................6, 7, 10, 13

*Amaysing Techs. Corp. v. Cyberair Commc'ns, Inc.*,
    No. CIV.A. 19890, 2004 WL 1192602 (Del. Ch. May 28, 2004) ..............................10

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)..............................................................................................2

*Berkeley Inv. Grp., Ltd. v. Colkitt*,
    455 F.3d 195 (3d Cir. 2006).................................................................................2

*Blattman v. C3, Inc.*,
    846 F. App'x 149 (3d Cir. 2021)......................................................................6, 15

*CAO Lighting, Inc. v. Gen. Elec. Co., Consumer Lighting (U.S.), LLC*,
    No. 20-681-GBW, 2023 WL 387585 (D. Del. Jan. 25, 2023) (Williams, J.) ............3, 4

*Chemipal Ltd. v. Slim-Fast Nutr. Foods Int'l, Inc.*,
    350 F. Supp. 2d 582 (D. Del. 2004)...........................................................2, 14, 15

*Duncan v. Theratx, Inc.*,
    775 A.2d 1019 (Del. 2001) ...................................................................................5

*eCommerce Indus., Inc. v. MWA Intel., Inc.*,
    No. CV 7471-VCP, 2013 WL 5621678 (Del. Ch. Sept. 30, 2013).........................5, 7, 8

*ELENZA, Inc. v. Alcon Lab'ys Holding Corp.*,
    No. CVN14C03185MMJCCLD, 2017 WL 2651716
    (Del. Super. Ct. Apr. 20, 2017), *aff'd*, 183 A.3d 717 (Del. 2018) ..............................13

*Korea Supply Co. v. Lockheed Martin Corp.*,
    63 P.3d 937 (Cal. 2003) .......................................................................................4

*Kosa v. Int'l Union United Auto.*,
    143 F. Supp. 3d 592 (E.D. Mich. 2015)..................................................................3

*Mann v. GTCR Golder Rauner, LLC*,
    483 F. Supp. 2d 864 (D. Ariz. 2007).......................................................................3

*Metro Storage Int'l LLC v. Harron*,
  275 A.3d. 810 (Del. Ch. 2022) ........................................................................10

*MindGames, Inc. v. Western Pub. Co., Inc.*,
  218 F.3d 652 (7th Cir. 2000) (Posner, J.)......................................................10

*Munenzon v. Peters Advisors, LLC*,
  553 F. Supp. 3d 187 (D.N.J. 2021) ..................................................................7

*Pharm. Prod. Dev., Inc. v. TVM Life Sci. Ventures VI, L.P.*,
  No. 5688-VCS, 2011 WL 549163 (Del. Ch. Feb. 16, 2011) .........................5

*Re v. Gannett Co., Inc.*,
  480 A.2d 662 (Del. Super. 1984) ...................................................................10

*Revolution Retail Sys., LLC v. Sentinel Techs., Inc.*,
  No. CV 10605-VCP, 2015 WL 6611601 (Del. Ch. Oct. 30, 2015) .............10

*Schonfeld v. Hilliard*,
  218 F.3d 164 (2d Cir. 2000).............................................................................13

*Scott v. Harris*,
  550 U.S. 372 (2007) ..........................................................................................8

*Siemens Med. Sols. USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*,
  637 F.3d 1269 (Fed. Cir. 2011)......................................................................14

*SIGA Techs., Inc. v. PharmAthene, Inc.*,
  67 A.3d 330 (Del. 2013) .............................................................10, 11, 13

*SLH Gen. Contractor, Inc. v. Ambience Inc.*,
  No. CPU4-19-001661, 2020 WL 1130325 (Del. Com. Pl. Mar. 4, 2020).....................5

*Spacelogic Ltd. v. Vinci Airports US, Inc.*,
  No. 02-3951(JS)(ARL), 2005 WL 8161418 (E.D.N.Y. Sept. 29, 2005) ................2, 14

*Tri-State Energy Sols., LLP v. KVAR Energy Sav. Inc.*,
  845 F. Supp. 2d 615 (D. Del. 2012)..................................................................2

*Re v. Gannett Co., Inc.*,
  480 A.2d 662 (Del. Super. 1984), *aff'd*, 496 A.2d 553 (Del. 1985) ...........10

*VICI Racing, LLC v. T-Mobile USA, Inc.*,
  763 F.3d 273 (3d Cir. 2014)........................................................................4, 5, 6

*VLIW Tech., LLC v. Hewlett-Packard Co.*,
  840 A.2d 606 (Del. 2003) ........................................................................................6

*XpertUniverse, Inc. v. Cisco Sys., Inc.*,
  No. 09-157-RGA, 2013 WL6118447 (D. Del. Nov. 20, 2013),
  *aff'd* 597 F. App'x 630 (Fed. Cir. 2015) .............................................9, 10, 13

**Statutes & Rules**

CAL. BUS. & PROF. CODE §17200 ..........................................................................4

FED. R. CIV. P. 26(a)(1)(A)(iii) .............................................................................14

FED. R. CIV. P. 37(c)(1) .........................................................................................14

FED. R. CIV. P. 56(g) ................................................................................................2

**Other Authorities**

23 WILLISTON ON CONTRACTS §63:1 (4th ed. 2022) ............................................7

24 WILLISTON ON CONTRACTS §64:12 (4th ed. 2010) ..........................................5

**Note**

All quoted emphasis is added unless otherwise indicated.

# GLOSSARY

| | |
|---|---|
| Allergan | Pharmaceutical company that manufactures and markets aesthetic injectables, including BOTOX® |
| Clark Foster | Truinject consultant, 2013-2016, and 30(b)(6) witness; co-inventor of U.S. Patent Nos. 10,290,232 and 9,792,836 |
| David Crean | Allergan Sr. Director of Business Development, 2003-2010 |
| Defendants or Galderma | Defendants Galderma, S.A., Galderma Laboratories, L.P., and Nestlé Skin Health, Inc. (n/k/a SHDS, Inc.) |
| ENA | Exclusive Negotiation Agreement, effective November 5, 2014 |
| Gabrielle Rios | Truinject Founder and CEO, 2013-present, and 30(b)(6) witness |
| Holly | Defendants' accused product |
| Dr. John Rogers | Galderma's global Head of Medical Affairs based in Paris, France; responsible for Galderma's global training initiatives |
| Kate | Truinject's injection training device |
| Lynn Salo | Allergan VP of Facial Aesthetics Division, 2013-Oct. 2014; Truinject consultant and investor |
| Philippe Schaison | Allergan President of U.S. Aesthetics Division, 2013-2016 |
| Plaintiff or Truinject | Plaintiff Truinject Corp. |
| Saritasa | Software company Truinject hired to develop Kate's software in 2014, fired in 2016, and sued for breach and fraud in 2017 |
| Scott Royston | Truinject Chief Technology Officer, 2017-2018 |
| SHIELD (or SHIELD Center) | Education center and innovation hub focused on skin health |
| The Chamberlain Group | Vendor hired by Defendants to develop Holly |

## CITATIONS KEY

References to the Appendix in Support of Defendants' Motions for Partial Summary Judgment and *Daubert* Motions shall be in the form of "A[pg#]."

References to the Concise Statement of Facts in Support of Defendants' Motion for Partial Summary Judgment No. 1 on Damages shall be in the form of "1SOF¶[para#]."

## I.   NATURE AND STAGE OF THE PROCEEDINGS

Truinject is a defunct startup that tried to develop a training tool for aesthetic injections called "Kate." From 2014 to 2017, Truinject sought but failed to secure business relationships with large companies like Allergan and Galderma. After ten years in existence, Truinject has generated no revenue, deal, or offer; nor has its technology ever been used to train anyone. Truinject now tries to turn its failed business into a ███████ damages model based on ████████████ ████████ from a hypothetical ███████████████████ (the "Allergan Theory").

The procedural background of this case is set forth in the Court's prior rulings on Defendants' motions to dismiss. *See* D.I. 169, 178, 193, 250, 264. Those rulings include the Court's repeated dismissal of Truinject's claims predicated on the theory that Defendants "caused a termination of [Truinject's] expectancy" of a "business relationship" with "Allergan," holding that "there are no facts making such an expectancy plausible." D.I. 250 at 10-12; D.I. 178 at 16-22, 26-31, 38. Following those rulings, Truinject abandoned the Allergan Theory during discovery and tried to develop damages theories based on Defendants' use of their own accused product, "Holly." However, discovery revealed that ████████████████████████████████. After three years of fact discovery and nearly 50 depositions devoted to its alternative theory, upon designating experts, Truinject scrapped its royalty/disgorgement models and revived the Allergan Theory. It now seeks damages solely in the form of █████████████████████████ ██████████████████████████ A77.

## II.   SUMMARY OF ARGUMENT

Truinject's Allergan Theory fails as a matter of law for at least four independent reasons. *First*, recovery of ███████████████████████████████ is barred by the law of the case because the Court has already held that "there are no facts making such an expectancy plausible." *Second*, the Allergan Theory does not seek recoverable contract

1

damages because lost collateral opportunities are not within the expectation or contemplation of parties like Truinject who expressly agree to forgo those opportunities. *Third*, the Allergan Theory bears no causal link to any alleged breach of contract. Every alleged breach occurred *after* Truinject's alleged lost-deal date, and Allergan's decision to pass on Truinject had nothing to do with any actionable conduct by Defendants. *Fourth*, Truinject cannot prove its damages with reasonable certainty because the Allergan Theory rests on pure speculation about Allergan's hypothetical valuation of hypothetical training benefits attributable to a hypothetical technology.

Because the Allergan Theory is the only damages theory presented by Truinject, there is no triable issue on damages. The Court should enter summary judgment of no damages on all claims.

## III. SUMMARY JUDGMENT STANDARD

The Third Circuit has characterized summary judgment as "'put up or shut up' time for the non-moving party." *Berkeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006). The movant's burden is "discharged by pointing out … that there is an absence of evidence supporting the non-moving party's case." *Tri-State Energy Sols., LLP v. KVAR Energy Sav. Inc.*, 845 F. Supp. 2d 615, 618 (D. Del. 2012). The non-movant "must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berkeley*, 455 F.3d at 201. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). Summary judgment is required when the damages sought are unrecoverable as a matter of law.[1]

---

[1] *See, e.g.*, *Chemipal Ltd. v. Slim-Fast Nutr. Foods Int'l, Inc.*, 350 F. Supp. 2d 582, 597 (D. Del. 2004) (granting summary judgment on various Delaware claims based on rejection of plaintiff's "entire basis for asserting damages" as a matter of law); *Spacelogic Ltd. v. Vinci Airports US, Inc.*, No. 02-3951(JS)(ARL), 2005 WL 8161418, at *1-2 (E.D.N.Y. Sept. 29, 2005) (applying Delaware law and granting MSJ "dismissing Plaintiff's claims for lost future profits"); *see also* FED. R. CIV.

## IV.  TRUINJECT HAS NOT PRESENTED ANY TRIABLE ISSUE OF DAMAGES.

### A.  The Allergan Theory Fails As a Matter of Law.

#### 1.  The Allergan Theory is barred by the law of the case.

This Court's prior rulings "at the motion to dismiss stage" are "law of the case that may not be disregarded." *CAO Lighting, Inc. v. Gen. Elec. Co., Consumer Lighting (U.S.), LLC*, No. 20-681-GBW, 2023 WL 387585, at *2-3 (D. Del. Jan. 25, 2023) (Williams, J.). A ruling that plaintiff failed to plausibly plead a predicate for one claim precludes relitigation of that issue for another claim.[2] This Court dismissed Truinject's claims alleging that *Defendants caused Truinject to lose an expected business opportunity with Allergan. See* D.I. 178 at 38, *adopted in* D.I. 193 at 7; D.I. 250 at 13, *adopted in* D.I. 264 at 4. In so doing, the Court held that there was no plausible "existence of a valid business expectancy," "basis of a *bona fide* expectancy," or "reasonable probability of a business opportunity" with "Allergan." D.I. 250 at 10. The Court found that "there are no facts making such an expectancy plausible," including Truinject's "meetings scheduled with [Allergan] in 2014 that Truinject canceled because it entered into [the ENA] with the Galderma Defendants." *Id.* at 10-11. It made clear that "[t]his is not a case where a business expectancy was reasonable based on a prior relationship" with Allergan because "Truinject was a startup company seeking to do its first deal." *Id.* at 12. Truinject thus "fail[ed] to plausibly allege" both: (1) "the *existence* of a valid business expectancy" and (2) "that the Galderma Defendants engaged in

---

P. 56(g) (permitting "ent[ry] [of] an order stating any material fact—*including an item of damages* or other relief—that is not genuinely in dispute and treating the fact as established in the case").

[2] *See, e.g.*, *Kosa v. Int'l Union United Auto.*, 143 F. Supp. 3d 592, 601-02 (E.D. Mich. 2015) (granting MSJ that plaintiff "cannot succeed on one of the two elements that comprise [one] claim" "[i]n light of [prior] holding" that "'[it] failed to state [another] claim'" requiring same element); *Mann v. GTCR Golder Rauner, LLC*, 483 F. Supp. 2d 864, 870-71 (D. Ariz. 2007) (finding "law of the case doctrine dictate[d]" granting MSJ on claim because "not once but twice before," the court had "explicitly held" that plaintiff failed to plausibly plead "a predicate to liability" for that claim).

intentional interference that induced or *caused* a termination of [such] an expectancy." *Id.*

In spite of these rulings, Truinject seeks damages based solely on " ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ A77;

A300(92:19-93:6) (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮ . Truinject's damages theory thus directly contradicts the law of the case that

"there are *no facts making such an expectancy plausible*." D.I. 250 at 10-11. Because the Court

has twice rejected Truinject's theory that Defendants caused Truinject to lose an opportunity with

Allergan, the Court should enter summary judgment precluding damages on that same theory.

### 2. The Allergan Theory seeks unrecoverable contract damages.

Truinject's damages theory also violates basic contract law. Truinject seeks damages under

the Allergan Theory only for alleged "breaches" of contracts governed by Delaware law.[3]

A3617(¶6(a)); A3623(¶9.2). In Delaware, "[c]ontract damages 'are designed to place the [plaintiff]

… in the same place as [it] would have been if the contract had been performed.'" *VICI Racing,*

*LLC v. T-Mobile USA, Inc.*, 763 F.3d 273, 294 (3d Cir. 2014). Such damages "compensate the

[plaintiff] for [its] reasonable expectation of the value of the breached contract, and, hence, what

---

[3] *See* A269; A282(20:10-24) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ; A292(58:25-59:8) ▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮ ). Though Truinject originally indicated it was seeking damages under the Allergan
Theory on its claims for both breach of contract *and* unfair competition under California Business
and Professions Code §17200, A203, Truinject recently served an "errata" to Holt's Reply Report
withdrawing any damages calculation as to the latter. A274 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ). In any case, Truinject cannot recover under the Allergan
Theory on its unfair competition claim as a matter of law because damages under §17200 are
limited solely to restitution. *See Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 948
(Cal. 2003) (holding that "[c]ompensation for a lost business opportunity is a measure of damages
and not restitution" and thus "not permitted under [§17200]").

the [plaintiff] lost." *Duncan v. Theratx, Inc.*, 775 A.2d 1019, 1022 (Del. 2001). They cannot "act as a windfall" by "plac[ing] the plaintiff in an overall better position than if the breach of contract had not occurred." *VICI*, 763 F.3d at 294, 303.

The Allergan Theory has nothing to do with Truinject's "expectation of the value of [any] *breached contract*" with *Defendants*, *Duncan*, 775 A.2d at 1022; it is instead concerned solely with "███████████████████████████████████████████████." A77. Such "profits lost on other tangential contracts are considered consequential"[4] and are not recoverable unless "'reasonably foreseeable or contemplated by the parties at the time the contract was entered into *as a probable result of a breach*.'"[5] Truinject's loss of a "████████████████████" (or any other third party) is not a contemplated result of any *breach* of the ENA. Rather, its damages expert (Krista Holt) concedes Truinject cancelled discussions with Allergan to *comply* with the ENA's exclusivity requirement. *See* A47 (███████████████████████████████████ █████████████████████████████████████).[6] Whatever opportunities Truinject would have had *without exclusivity* were thus beyond the reasonable contemplation and expectation of parties to an *Exclusive Negotiation Agreement*.[7] As a result, any

---

[4] *SLH Gen. Contractor, Inc. v. Ambience Inc.*, No. CPU4-19-001661, 2020 WL 1130325, at *6 (Del. Com. Pl. Mar. 4, 2020); *accord eCommerce Indus., Inc. v. MWA Intel., Inc.*, No. CV 7471-VCP, 2013 WL 5621678, at *47 (Del. Ch. Sept. 30, 2013) ("[L]ost profits are considered consequential damages when 'as a result of the breach, the non-breaching party suffers loss of profits on collateral business arrangements.'").

[5] *Pharm. Prod. Dev., Inc. v. TVM Life Sci. Ventures VI, L.P.*, No. 5688-VCS, 2011 WL 549163, at *6 (Del. Ch. Feb. 16, 2011) (quoting 24 WILLISTON ON CONTRACTS §64:12 (4th ed. 2010)).

[6] *See also* A165; A28 (██████████████████████████████████████ ██████████); *id.* at 42 █████████████████████ ████████████; A256 ████████████████████; *see also* A298(85:11-18).



[7] The undisputed fact that ██████ was enough for Truinject to cancel meetings with Allergan in November 2014 also demonstrates that losing a ██████ licensing deal with Allergan was not "reasonably foreseeable or contemplated" by anyone. *TVM*, 2011 WL 549163, at *6.

"█████████████████████████" from such opportunities (A77) "exceed [Truinject's]

expectation interest" and constitute an unrecoverable "windfall." *VICI*, 763 F.3d at 303.

### 3.   The Allergan Theory bears no causal link to Defendants' alleged conduct.

The Allergan Theory also fails for lack of causal nexus. "A plaintiff cannot prevail on a

contract claim without proof that damages resulted from breach." *Blattman v. C3, Inc.*, 846 F.

App'x 149, 154 (3d Cir. 2021) (citing *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606,

612 (Del. 2003)). Truinject seeks damages under the Allergan Theory based on three "breaches"

of contract: Defendants' alleged disclosure of Truinject's confidential information to third parties



A80; A47 ("███████████████████

████████████████████████████████████

███████████"); A269 (█████████████████████).[8] There is no evidence

of any causal link between these alleged breaches and Truinject's alleged lost deal.

*First*, and dispositively, there is no evidence that Truinject's alleged lost deal resulted from

any of the three alleged breaches. Indeed, that was impossible, as all three alleged disclosures

occurred *after November 11, 2014*—the date Truinject claims it would have had a deal with

Allergan "████████████████."[9] A jury would have no factual (or logical) basis to find

that Truinject would have had a deal with Allergan "but-for" breaches that *had not occurred*.[10]

---

[8] Truinject fails to tie any damages to Defendants' *accused products*—which did not launch until *2018*—long after Truinject's "presumed deal" with Allergan in 2014. A49; A291(57:6-8).

[9] *Compare* A271 (████████████████████████████████████), *with* A269 (██████████████████████████████████).

[10] *See AlphaMed Pharms. Corp. v. Arriva Pharms., Inc.*, 432 F. Supp. 2d 1319, 1330, 1344-45 (S.D. Fla. 2006), *aff'd*, 294 F. App'x 501 (11th Cir. 2008) (granting JMOL against damages theory "hampered by a temporal problem" because plaintiff's alleged lost "window of opportunity" "actually preceded [defendant's alleged] interference … by several months").

*Second*, Truinject does not contend that it would have reached a deal with Allergan had Galderma *not breached* the ENA—rather, Truinject concedes that its own voluntary agreement to an exclusive negotiation period (of only 90 days) prevented it from pursuing other deals in November 2014. Truinject's damages expert concedes that "█████████████████████ ████████████████████████████—not any alleged *breach* thereof. A165.[11] Truinject's alleged causal link between damages and *entering* the ENA is not a causal link between damages and *breaching* the ENA. *See* 23 WILLISTON ON CONTRACTS §63:1 (4th ed. 2022) ("A party cannot [] breach a contract in the formation of the contract itself."). And Truinject cannot prove causation by simply alleging—as its expert stated at her deposition—that Truinject "██████████████ ████████████████████████████████████████████████████████," A289(46:6-49:21). "[*A*]*ny* contracting party may easily allege that it never would have entered into the contract if it had known the other party was going to breach."[12] The question is not what Truinject would have done had it known the future; the question is "how the positions of the parties would differ in the 'but-for' world—*i.e.*, the hypothetical world that would exist if the Agreement *had been fully performed.*" *eCommerce,* 2013 WL 5621678, at *43. The Allergan Theory assumes the wrong "but-for world" wherein the ENA *does not exist.* It thus fails as a matter of law.

*Third*, the undisputed record confirms that Truinject's business failed for reasons having nothing to do with Defendants. For example, it is █████████████████████████████ ███████████████████████. *See* 1SOF¶38. Moreover, all contemporaneous

---

[11] *See also* A290(50:15-51:20) (█████████████████████████████████████████████████ ████████████████████████████████████████████████"), A293(64:6-9) (" ████████████████████████████████████████████████."); A47-48 (" ████████████████████████████████████████████████ ), *id.* (" ████████████████████████████████████████████████ ).

[12] *Munenzon v. Peters Advisors, LLC*, 553 F. Supp. 3d 187, 207 (D.N.J. 2021).



evidence shows that Allergan rejected ███████████████████████████████

████████████████████████ 1SOF¶¶12, 18-22, 41. Indeed, in another

lawsuit, Truinject's founder (Rios) attested under oath that the "██████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

██████" of the software developer Truinject hired in August 2014, Saritasa. A969; *see also id.*

("██████████████████████████████████"). According to Rios, by *January*

*2017*—"█████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

██████ A962. What Saritasa "███████████████████████████████████

████████████████████████████████." A952; A955. These admissions sever any

causal link between Truinject's alleged lost Allergan deal and Defendants' alleged breaches. There

is no evidence that Allergan was interested in acquiring technology that was "██████████████

███████████" and not "anywhere close to ready for commercial deployment" in 2014.

Truinject's only "evidence" of Allergan's interest in a hypothetical deal is the unsupported

speculation of Philippe Schaison, eight years after-the-fact. A350-51(293:25-294:8). Even if

Schaison's opinion was admissible,[13] it does not tie any lost deal to Defendants' alleged *breaches*.

He testified that his "██████████████████████████████████████" resulted from his

---

[13] Mr. Schaison's testimony is beyond his own firsthand knowledge and amounts to improper lay opinion and unsupported speculation. *See* 1SOF¶¶13-17, 23-29, 38-43. Regardless, it cannot preclude summary judgment in the face of overwhelming evidence (including his own contemporaneous statements) confirming that Allergan was not interested in Truinject's proposed deal. *See, e.g.*, 1SOF¶¶12, 18-22, 41; *see Scott v. Harris*, 550 U.S. 372, 380 (2007) ("for purposes of ruling on a motion for summary judgment," "a court should not adopt [a] version of the facts" that "is blatantly contradicted by the record, so that no reasonable jury could believe it").

admitted "███████████████████," not any alleged breach. A456(341:15-21).[14]

Truinject's case for causation is weaker than what Judge Andrews and the Federal Circuit held insufficient as a matter of law for an analogous damages theory in *XpertUniverse, Inc. v. Cisco Systems, Inc.*, No. 09-157-RGA, 2013 WL6118447 (D. Del. Nov. 20, 2013), *aff'd* 597 F. App'x 630 (Fed. Cir. 2015). There, the plaintiff "XU" was a defunct startup that had pursued partnerships with large companies, including Cisco, but "had no sales and no contracts for future sales[;] [n]or had it succeeded in producing a fully functional product." 597 F. App'x at 639. Cisco entered an NDA with XU to facilitate review of the product, internally decided against partnering, delayed informing XU of that decision for months, and later introduced its own product. *Id.* at 632-33. XU argued that but-for Cisco's delay "designed to prevent it from entering into a partnership with one of Cisco's competitors," XU "could have preserved its market value by monetizing a partnership with CitiGroup, IBM, or Genesys." *Id.* at 635-38 (cleaned up). Judge Andrews found "no evidence that [Cisco's delay] destroyed any potential partnership opportunities" and that XU "offered, at most, only speculation that [earlier disclosure by Cisco] would have turned out any differently." 2013 WL6118447, at *5. There was "no evidence that [anyone] had ever made a bid," and XU's alleged opportunities "disappeared because of [other] factors" and "because XU's product was not ready." *Id.* The Federal Circuit affirmed, agreeing that "there was insufficient evidence that [Cisco's alleged concealment] caused, or even hastened, [XU]'s financial demise." 597 F. App'x at 639. Like XU, Truinject: (i) "ha[s] no sales and no contracts for future sales"; (ii) has no evidence that Allergan "ever made a bid"; (iii) has not "succeeded in producing a fully functional product"; (iv) concedes its "product was not ready"; and (v) has "no evidence that [Galderma's alleged

---

[14] Like Holt, Schaison also ties the alleged lost deal to Truinject's *entry of the ENA*. *E.g.*, A360(¶15) ("Allergan would have considered entering into a deal with Truinject **but for Truinject's decision** to partner with Galderma.").

'breaches'] destroyed any potential partnership opportunities." *Id.* at 635-39; 2013 WL6118447, at *5. Because there is no evidence of causation, summary judgment is proper.

### 4.   The Allergan Theory cannot be proven with reasonable certainty.

Finally, Truinject cannot prove the existence or amount of damages under the Allergan Theory because it rests entirely on naked and unsupported speculation about how Allergan would have valued the imaginary benefits of an unproven technology. "[R]ecovery for lost profits will be allowed only if their loss is capable of being proved[] with a reasonable degree of certainty. No recovery can be had for loss of profits which are determined to be uncertain, contingent, conjectural, or speculative.'" *SIGA Techs., Inc. v. PharmAthene, Inc.*, 67 A.3d 330, 351 n.99 (Del. 2013). "Delaware courts regularly refuse to award damages based on the lost profits from a new business, deeming evidence of lost profits to be too speculative, uncertain, and remote when there is no history of prior profits."[15] And "Delaware courts have held that 'measuring money damages for an *unproven technology*' is a '*nearly impossible task*.'"[16] The reason is simple: "the commercial success of a new venture should be determined in the marketplace, not in the courtroom."[17]

Truinject seeks damages for an unproven technology that the marketplace rejected. It is

---

[15] *Metro Storage Int'l LLC v. Harron*, 275 A.3d. 810, 860-61 (Del. Ch. 2022) (rejecting damages model predicated on what "a speculative startup venture" "could have been if everything had gone as planned"); *accord  Re v. Gannett Co., Inc.*, 480 A.2d 662, 668 (Del. Super. 1984), *aff'd*, 496 A.2d 553 (Del. 1985) (noting same "as a general rule").

[16] *Revolution Retail Sys., LLC v. Sentinel Techs., Inc.*, No. CV 10605-VCP, 2015 WL 6611601, at *24 (Del. Ch. Oct. 30, 2015); *accord Amaysing Techs. Corp. v. Cyberair Commc'ns, Inc.*, No. CIV.A. 19890, 2004 WL 1192602, at *4 (Del. Ch. May 28, 2004).

[17] *AlphaMed*, 432 F. Supp. 2d at 1339-40 ("An endorsement of the alternative would permit start-up corporations to reap unearned profits without bearing the costs and risks that every other entrepreneur must shoulder."); *see also MindGames, Inc. v. Western Pub. Co., Inc.*, 218 F.3d 652, 658 (7th Cir. 2000) (Posner, J.) ("[A] start-up company should not be permitted to obtain pie-in-the-sky damages upon allegations that it was snuffed out before it could begin to operate ... capitalizing fantasized earnings into a huge present value sought as damages[.]").

undisputed that: (i) "███████████████████████████████████

███████████████" A15; (ii) Kate was an undeveloped ███████ that was "████████

█████████" at the time of Truinject's alleged lost deal in 2014, 1SOF¶¶7-10, and (iii) after

expiration of the ENA, Allergan repeatedly passed on "Kate" from 2015-2017. 1SOF¶¶12, 41.

Truinject nonetheless seeks "████████████████████████████████" in

November 2014 wherein Allergan would "██████████████████████" and

reap "████████████████████████" yielding an increase in Allergan's worldwide

revenue by ████████ through █████. A49; A71. It is difficult to imagine anything more "uncertain,

contingent, conjectural, [and] speculative" than a third party's hypothetical valuation of

hypothetical exclusive rights to a hypothetical technology based on its hypothetical ability to

indirectly generate billions of dollars in revenue—not from the technology's *sale*, but its

hypothetical use in *training*. *SIGA*, 67 A.3d at 351 n.99. The theory assumes, among other things:

1. ***Kate's readiness for "demonstration" to Allergan in 2014.*** Kate would have been capable of demonstration to Allergan's physicians in 2014, including its global injection trainer, Dr. Mauricio de Maio, at the cancelled November 2014 meeting, 1SOF¶¶23-29, even though Kate was "█████████████" in 2014. 1SOF¶¶7-10.

2. ***Kate's approval by Allergan's expert injection trainer in November 2014.*** Dr. de Maio would have both attended the November 2014 meeting (despite emails showing this was doubtful) and validated Mr. Schaison's view of "Kate" (despite Mr. Schaison's lack of injector expertise and knowledge of Dr. de Maio's views). 1SOF¶¶15-17, 23, 28-31.

3. ***Kate's performance of "minimum capabilities."*** Kate would have satisfied both of Mr. Schaison's "██████████" (████████████████████), even though Kate undisputedly lacked both capabilities in November 2014. 1SOF¶¶21-22.

4. ***Alleviation of Allergan's concerns with Kate's cost.*** Allergan's stated concerns with Kate's cost would have been "██████████████████████████," A125, despite no competent evidence that Allergan was interested in "██████████████████." 1SOF¶12; A1749-51.

5. ***Kate's survival of Allergan due diligence.*** Kate would have passed Allergan's due diligence, A324(187:20-188:11), though only a few out of hundreds of transactions did so annually, and Allergan never performed formal due diligence on Kate. 1SOF¶¶23-29.

6. ***IP capable of providing "exclusive" access to Kate.*** Allergan would have reviewed and determined that Truinject's (unspecified and unapportioned) IP was capable of preventing competition with Kate, even though Allergan never reviewed Truinject's IP. 1SOF¶¶24-27.

7. ***Deal approval by Allergan CEO.*** Mr. Schaison would have secured CEO approval for an exorbitant licensing deal with Truinject that included upfront payment of $100 million cash plus royalties on flagship products like BOTOX, even though he could not secure approval for any deal with Truinject from 2014-2016. 1SOF¶¶13-14, 41.

8. ***Deal approval by Actavis.*** Allergan's "merger with Actavis [in November 2014] ██████ ████████████████████████████████," A121, despite contemporaneous restrictions on Allergan's ability to enter deals without Actavis's approval. 1SOF¶39.

9. ***Kate's completion by Allergan.*** ██████████████████████████████████████████ ███████████," A116, and "███████████████████████████████████████████ ████████████████████," A57, though Kate was "not anywhere close to ready for commercial deployment" in *2017*. 1SOF¶¶7-10.

10. ***Kate training programs for Allergan products.*** Training programs for more than a dozen different Allergan products/indications would be developed for Kate, A63-64, though no training program for any product/indication has ever been developed for Kate. 1SOF¶¶5, 42.

11. ***Kate assessment training capability.*** Facial assessment training "█████████████ ████████████████████," A137, even though Allergan (including Schaison) viewed Kate as incapable of assessment training. 1SOF¶¶19-20.

12. ***"Kate's value" to FDA, Allergan, and injectors.*** Kate would have met Schaison's seven "factors," including, *inter alia*: (i) "the value Kate had with the FDA," (ii) "Kate's value in helping reduce injector error rates," (iii) "Kate's value in helping Allergan obtain faster FDA approval," and (iv) "Kate's value in maintaining and increasing Allergan's market share"—even though Schaison does not "██████████████████████████████████████████ ████████████████████" 1SOF¶43.

13. ***Kate's ability to generate new Allergan injectors.*** Allergan's use of Kate for training would generate thousands of new injectors who would purchase Allergan products. A56-59. This assumption in turn is founded on many other assumptions including Kate's impact on reaching new injectors, rates of retention, and product adoption. A1609-19(¶¶93-97).

14. ***Kate's mass distribution.*** Truinject and Allergan would manufacture and distribute an "███ ███" of ████ Kate units, A72, though Truinject has never distributed even one Kate. A15.

15. ***Kate's ability to generate sales of Allergan existing products.*** Providing free access to training on Kate (without direct sales of Kate) would increase Allergan's revenue through incremental sales of its existing injectable products. A59-62. This assumption is founded on many other assumptions related to injectors' participation in and progression through 8 different "tiers" of Allergan's frequent buyer system over time. A1613-19(¶¶98-104).

16. ***Kate's ability to generate sales of Allergan future products.*** Training on Kate would increase sales of 13 products/indications that did not exist in November 2014. A63-64. This assumption is founded on others related to each new product/indication's need for additional training and Kate's ability to provide such training and increase adoption speed, A1613-19(¶¶98-104), and accounts for up to ████ of Kate's projected revenue ██████████. A1618(¶¶98, 104).

12

*None* of these assumptions are "capable of being proved, with a reasonable degree of certainty." *SIGA*, 67 A.3d at 351 n.99. They are all speculative, if not demonstrably incorrect. Truinject's inability to prove even one of these assumptions dooms the entire Allergan Theory.[18]

Courts have rejected damages theories requiring far less speculation than the Allergan Theory. In *ELENZA*, the court granted summary judgment that "lost enterprise damages [were] not legally recoverable" for "a relatively new company" with "no product, no sales, and no regulatory approval," despite evidence of "[defendant's] own valuation of [the new company]" and "two comparable sales" of companies that "developed'" the same type of product.[19] Here, neither Defendants nor Allergan have ever valued Truinject or Kate; and it is undisputed that no comparable transactions exist. 1SOF¶48.[20] In *SpaceLogic*, the court entered summary judgment dismissing a startup's contract claim for "lost future profits it would have gained if [it] … was able to capitalize on the United States market," even though the contract itself included a detailed "Business Plan … contain[ing] projections of 55 projects obtained [to date], and provide[d] specific profit margins for each sale," because: (i) such "figures are not the type of projections that

---

[18] *See, e.g.*, *XpertUniverse*, 2013 WL6118447, at *5 ("'For [damages] opinions to be of any use, [plaintiff] was required to offer *sufficient proof of the assumptions* that [an expert] accepted as the foundation for his opinion…. Only upon such a showing could [plaintiff] proceed to the next prong of its [damages] analysis and offer [the expert's] opinion to provide the jury with a non-speculative estimation of the amount of [plaintiff's] injury.'") (quoting *Alphamed*); *Alphamed*, 432 F. Supp. 2d at 1347 ("Whether the individual 'but for' assumptions could be accepted by a reasonable person is one question. Whether *the entire scenario* could be accepted by a reasonable person as being reasonably certain is another question."); *Schonfeld v. Hilliard*, 218 F.3d 164, 172 (2d Cir. 2000) ("Projections of future profits based upon 'a multitude of assumptions' that require 'speculation and conjecture' and few known factors do not provide the requisite certainty.").

[19] *ELENZA, Inc. v. Alcon Lab'ys Holding Corp.*, No. CVN14C03185MMJCCLD, 2017 WL 2651716, at *5-6 (Del. Super. Ct. Apr. 20, 2017), *aff'd*, 183 A.3d 717 (Del. 2018).

[20] Although the Allergan Theory relies on David Crean's experience with how Allergan (as of 2010) "typically" structured transactions involving *products to be sold*, Mr. Crean admitted his experience excludes transactions "having anything to do with training" and "products given away for free." A602(142:16-143:17); A605(154:4-14).

lend themselves to a reasonably certain projection"; (ii) there was "no principled basis to project any sales of Plaintiff's [] system because the system ha[d], at most, only been installed at one location"; and (iii) it was "undisputed that Plaintiff's [] system ha[d] no track record of sales in the United States." *Spacelogic*, 2005 WL 8161418, at *2, *4. Kate has never been "installed" for any commercial use *at all*; nor are there any "specific profit margins" for its "sale," as Kate has never been sold and would not have been sold even under the Allergan Theory.

Even if Truinject could prove the existence of damages under the Allergan Theory with reasonable certainty, there would still be no "basis for a reasonable *estimate* of [Truinject's alleged] loss." *Chemipal*, 350 F. Supp. 2d at 597. The "basis" for Kate's estimated incremental value to Allergan is Truinject investor Lynn Salo's recollection of alleged (but unproduced) eight-year-old



"█████████████████████████████████████████████████

████████████████████████████████████████████████

██." A112.[21] The "basis" f████████████████████████████

████ regarding "Kate's value" that he conceded "███████████████████████

████████," A414(172:5-173:1); and (ii) David Crean's experience structuring transactions that he admitted are *not* comparable. 1SOF¶¶43, 48. Crean is also the "basis" for Truinject's estimated ████

████████████████████████████████████████████ A628(248:24-249:3). The existence and amount of damages under the Allergan Theory cannot be proven with reasonable certainty. Summary judgment is required.

---

[21] Truinject's attempt to compute damages from unproduced documents is prohibited by FED. R. CIV. P. 26(a)(1)(A)(iii) and 37(c)(1), as well as controlling precedent. *See, e.g.*, *Siemens Med. Sols. USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*, 637 F.3d 1269, 1285-87 (Fed. Cir. 2011) (applying Third Circuit law).

**B.   Summary Judgment of No Damages on All Claims is Warranted.**

Other than the Allergan Theory, Truinject has presented no evidence or calculation of damages for any of its claims. 1SOF¶¶44-46. In any event, it is far too late for Truinject to disclose and pursue yet *another* damages theory. The Court already found that Truinject failed to timely disclose the Allergan Theory during discovery and led Defendants to believe it was pursuing a different theory.[22] Because Truinject has not presented evidence of any triable issue of damages for any claim, summary judgment for Defendants is appropriate.[23]

## V.   CONCLUSION

The Court should grant summary judgment of no damages on all Truinject's claims. At a minimum, the Court should grant summary judgment of no damages under the Allergan Theory.

---

[22] A3204-05(4:3-5:2) (Judge Hall finding that the Allergan Theory "was not disclosed" in discovery, that "[n]o reasonable reader of [Truinject's] interrogatory responses could have anticipated this theory," and that out of "hundreds of disputes," the "litigation position and tactics on plaintiff's side, not just in this dispute, but consistently during this litigation is near, if not at the top of [her] list, of questionable conduct.").

[23] *See, e.g.*, *Chemipal*, 350 F. Supp. 2d at 597 (granting summary judgment on all "damages claims"); *accord Blattman*, 846 F. App'x at 154 ("[B]ecause [the District Court rejected] the basis for the only evidence Plaintiffs presented … for alleged contract damages, the District Court correctly found Plaintiffs failed to offer any evidence that could be used to prove damages" and "Plaintiffs' [] claim failed as a matter of law.").

OF COUNSEL:

MUNCK WILSON MANDALA, LLP

Michael C. Wilson
Jenny L. Martinez
William A. Munck
Sarah J. Lopano
Chase A. Cobern
Charles T. Zerner
Tri T. Truong
12770 Coit Road, Suite 600
Dallas, Texas 75251
(972) 628-3600

Dated: March 8, 2023

MORRIS, NICHOLS, ARSHT & TUNNELL, LLP

*/s/ Jeremy A. Tigan*
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com

*Attorneys for Defendants*

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on March 8, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused the foregoing document to be served on March 8, 2023, upon the following in the manner indicated.

David A. Jenkins, Esquire                                  *VIA ELECTRONIC MAIL*
Neal C. Belgam, Esquire
Kelly A. Green, Esquire
SMITH, KATZENSTEIN & JENKINS LLP
1000 West Street, Suite 1501
Wilmington, DE 19801
*Attorneys for Plaintiff*


Jonathan K. Waldrop, Esquire                              *VIA ELECTRONIC MAIL*
Nefertiti J. Alexander, Esquire
Marcus A. Barber, Esquire
John W. Downing, Esquire
Heather S. Kim, Esquire
ThucMinh Nguyen, Esquire
Chen Jia, Esquire
KASOWITZ BENSON TORRES LLP
333 Twin Dolphin Drive, Suite 200
Redwood Shores, CA 94065
*Attorneys for Plaintiff*

                                               */s/ Jeremy A. Tigan*
                                               Jeremy A. Tigan

5340297

17