**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| TRUINJECT CORP., | |
| Plaintiff, | |
| v. | C. A. No. 19-592-GBW |
| GALDERMA S.A., et al., | |
| Defendants. | |

---

## <u>MEMORANDUM ORDER</u>

Pending before the Court are (1) Plaintiff Truinject Corporation's ("Truinject") Motion to Strike the Answer of Defendants Galderma, S.A., Galderma Laboratories, L.P., and Nestle Skin Health, Inc. (collectively, "Defendants") (D.I. 803); (2) Defendants' Motion for Summary Judgment on Plaintiff's Remaining Claims (D.I. 829); (3) Plaintiff's Motion for Leave to Serve a Supplemental Report of Plaintiff's Damages Expert (D.I. 832); (4) Defendants' Motion for Leave to File a Sur-Reply in Opposition to Plaintiff's Motion for Leave (D.I. 863); and (5) Plaintiff's Motion to Set a Trial Date (D.I. 865).

For the following reasons, Plaintiff's Motion to Strike is **GRANTED-IN-PART**, Defendants' Motion for Summary Judgment is **GRANTED**, and the remaining motions are **DENIED AS MOOT**.

## I.   PLAINTIFF'S MOTION TO STRIKE IS GRANTED AS TO DEFENDANTS' STATUTE OF LIMITATIONS DEFENSE BUT OTHERWISE DENIED.

The operative complaint is the Corrected Second Amended Complaint, filed on April 30, 2020.  D.I. 204.  Defendants filed a motion to dismiss the Second Amended Complaint and, on

1

August 28, 2020, Judge Hall entered a Report and Recommendation granting the motion to dismiss in part.  D.I. 250.   On November 20, 2020, the Court adopted Judge Hall's Report and Recommendations and authorized Truinject to file a third amended complaint by no later than December 11, 2020.  D.I. 264.  Defendants had also recently filed a motion to dismiss or transfer a lawsuit in the Eastern District of Texas.   On November 18, 2020, the Texas lawsuit was transferred to this district and, on January 8, 2021, the parties filed a joint statement in the Texas lawsuit discussing how to proceed with the transferred claims.  *Truinject Corp. v. Nestle S.A. et al.*, 20-cv-1765, D.I. 70 (D. Del. Jan. 8, 2021).   The parties stipulated that the deadline for Defendants to answer the Second Amended Complaint should be fourteen (14) days after "the Court issues an order or otherwise instructs the parties regarding the issues raised in the joint statement (or such time period ordered by the Court during or after the status conference."  D.I. 270.  On February 9, 2021, the Court entered an order requiring Truinject to seek leave to amend its complaint if it wanted to proceed on any claims from the Texas lawsuit.  20-cv-1675, D.I. 72. The Court stayed Defendants' obligation to answer the complaint in the "instant action" until "21 days after resolution of the forthcoming motion to amend or further order of the Court."  *Id.*

On April 9, 2021, Truinject filed its Motion for Leave to File its Third Amended Complaint.  D.I. 293, D.I. 294.  On September 14, 2021, then-Magistrate Judge Hall issued an opinion granting-in-part and denying-in-part the motion for leave.  D.I. 355.  Judge Hall ordered the parties to meet and confer and file a status report regarding which claims should be dismissed from the Texas lawsuit as duplicative of the Delaware lawsuit, as well as what would be done about the remainder of the claims.  Sept. 14, 2021, Transcript at 99:4-10.  During the hearing and in response to a question from Truinject's counsel, Judge Hall ordered the parties to meet and

confer about Defendants' deadline to answer and "[i]f there is a dispute about it, you can raise it in your . . . report." *Id.* at 100:16-20.

On September 21, 2021, the parties met and conferred. D.I. 783, Ex. 1. Truinject represented that it intended to file a Third Amended Complaint, and Defendants stated that they would file an answer thirty (30) days after the Court's approval or rejection of Judge Hall's September 14, 2021 Report and Recommendations. *Id.* at 2. Truinject acknowledged Defendants' proposed timeline but stated its belief that the timeline was unreasonable. *Id.* Truinject filed objections to Judge Hall's Report and Recommendations. D.I. 360. Truinject did not file a Third Amended Complaint, did not send a draft of a Third Amended Complaint to Defendants, did not mention any dispute about Defendants' deadline to answer in the joint status report, and did not ask the Court for any relief related to the deadline. D.I. 783 at 7.

This case and the Texas lawsuit were reassigned to Judge Williams on September 7, 2022. On October 24, 2022, the Court ordered the parties to provide the Court with a joint status report. 20-1675, D.I. 91. In the parties' joint status report, the parties noted that three issues remained pending: (1) Truinject's objections to Judge Hall's Report and Recommendations; (2) the question of what to do about the claims in the Texas lawsuit; and (3) the deadline for Defendants to Answer. 20-1675, D.I. 96, at 8. On September 15, 2023, the Court entered a Memorandum Order overruling Truinject's objections to Judge Hall's order. D.I. 780. The Court ordered the parties to submit a status report addressing "the status of Plaintiff's complaint and Defendants' response thereto in light of the Court's recent order." D.I. 781. In the status report, Truinject indicated that it no longer intended to file a Third Amended Complaint, suggested that Defendants may not answer the Corrected Second Amended Complaint, and that "Defendants will not need to file an answer" because the pretrial order would functionally replace the pleadings. D.I. 783 at 1-2. On September

3

20, 2023, Defendants answered the Corrected Second Amended Complaint.  D.I. 788.  On September 25, 2023, Truinject filed an Emergency Motion to Strike, seeking to have all allegations deemed admitted and for any affirmative defenses to be stricken.  D.I. 803.  The Court held a pre-trial conference on September 28, 2023, and vacated the trial scheduled to begin on October 10, 2023.[1]  D.I. 808.

Truinject's request to deem admitted the allegations of the Corrected Second Amended Complaint is a non-starter.  Truinject has waived any argument as to Defendants' failure to answer by "wait[ing] until . . . motions after the close of summary judgment briefing to raise any argument concerning the [Defendants'] failure to file an answer."  *Howell v. Millersville University of Pennsylvania*, 749 F. App'x 130, 136 n. 4 (3d Cir. 2018).[2]  Moreover, Judge Hall instructed Truinject's counsel to raise any dispute about the timing of Defendants' answer in the joint status report filed on October 1, 2021.  Sept. 14, 2021, Transcript at 100:16-20.  The parties met, Defendants indicated their intent to file an answer after the objections to Judge Hall's order were resolved, and neither party raised the dispute in the joint status report.  20-cv-1675, D.I. 87.  A failure to object to Defendants' plan by the deadline prescribed by a Court order constitutes a waiver of objection.

However, even "[w]hen no answer has been filed, affirmative defenses should still be raised early in the proceedings."  *Parkell v. Senato*, No. 14-446-LPS, 2019 WL 1435883, at *7 (D.

---

[1] The Court had previously granted several motions for summary judgment, significantly altering the potential trial issues.  D.I. 804.

[2] Truinject claims *Howell* only stands for the proposition that a plaintiff could not raise the lack of an answer for the first time on appeal.  D.I. 826 at 1.  In *Howell*, the plaintiff raised the lack of an answer in the District Court prior to the appeal.  749 F. App'x at 136 n.4.  Truinject's attempt to distinguish *Howell* thus fails.

Del. Mar. 31, 2019) (barring new defenses raised four (4) years after the Complaint and after two (2) rounds of summary judgment briefing). The standard to permit new affirmative defenses is whether the plaintiff would be prejudiced by allowing the new affirmative defenses. *Id.*; *see Jones v. Gardels*, 2006 WL 37039, at *3 (D. Del. Jan. 6, 2006).

Defendants assert affirmative defenses of invalidity, fraudulent inducement, anticipatory breach, and statute of limitations. D.I. 788 at 5-7. The parties agree that Defendants have adequately provided notice of their invalidity defenses via expert reports, curing any prejudice. D.I. 803 at 2 n. 2.

With respect to the defense of fraudulent inducement, Defendants allege that certain statements by Ms. Rios with respect to 2014 agreements were fraudulent. Truinject contends that Defendants never state when or how they learned that the statements were untrue, and that this information would be relevant to Truinject's contentions regarding this defense. *Id.* at 3. However, numerous witnesses have testified as to Ms. Rios's alleged misrepresentations, and Truinject's first and third motions *in limine* were directed to excluding evidence that Ms. Rios made fraudulent statements to induce entry into the contracts. D.I. 819 Ex. 2 ¶¶ 159-162; Ex. 15 at 42:3-17, 196:5-18; Ex. 16 at 286:5-288:15; D.I. 794, Ex. 14. Truinject cannot credibly claim that it was surprised or prejudiced by the assertion of a defense of fraudulent inducement.

With respect to the defense of anticipatory breach, Truinject alleges that Defendants have not disclosed who made the determination that Truinject repudiated the contract, or when that decision was made. Defendants point to a pre-suit email between Defendants and Truinject, wherein Defendants informed Truinject that Truinject canceled the relevant demonstration and breached the contract. D.I. 819 at 5 (citing D.I. 204 ¶¶ 209-10). Moreover, Defendants' experts discussed this defense. *See* D.I. 738, Ex. 8 (Meglan Rebuttal Report B) ¶ 64 ("Galderma viewed

Truinject's cancelation as a breach of the ENA."); Ex. 9 (Smalstig Rebuttal Report) ¶¶ 55, 62-75, 87, 160-75.  While the pre-litigation communications do not explicitly evidence an intent to raise the defense of anticipatory breach in the litigation, when combined with the expert reports it is difficult to see how Truinject would be prejudiced or surprised by a defense of anticipatory breach.

Lastly, with respect to the defense of statute of limitations, Truinject alleges that this defense hinges on fact-intensive issues of when Truinject reasonably discovered Defendants' actions. D.I. 803 at 3 (citing *TL of Fla., Inc. v. Terex Corp.*, 54 F. Supp. 3d 320, 328 (D. Del. 2014)).  Indeed, Defendants do not suggest that they had previously raised this defense. *See* D.I. 783 at 9-10 (listing discovery on all other defenses, but not the statute of limitations); D.I. 819 at 5 (same).  The raising of a new factually intensive defense would prejudice Truinject, especially at this late stage of litigation. *Magsil Corp. v. Seagate Tech.*, No. 08–940, 2010 WL 2710472, at *2 (D. Del. July 7, 2010).  The Court will thus strike Defendants' statute of limitations affirmative defense.

## II.   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT IS GRANTED.

Defendants move for summary judgment on all of Plaintiff's remaining claims.  Defendants contend that they are entitled to summary judgment on (1) Plaintiff's claim for breach of contract; (2) Plaintiff's claim for violation of the Delaware Deceptive Trade Practices Act ("DTPA"); and (3) Plaintiff's claim for violation of the California Unfair Competition Law ("UCL").  D.I. 830 at 1.

### a.  Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact is one that could lead a reasonable jury to find in favor of

the nonmoving party." *Bletz v. Corrie*, 974 F.3d 306, 308 (3d Cir. 2020) (citation omitted). "The court must review the record as a whole, draw all reasonable inferences in favor of the nonmoving party, and must not 'weigh the evidence or make credibility determinations.'" *Id.* (citation omitted). The Court must enter summary judgment if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [its] case, and on which [the non-moving] party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 204 (3d Cir. 2022) (quoting Celotex, 477 U.S. at 322). The Federal Circuit "reviews a district court's grant of summary judgment under the law of the regional circuit, here the Third Circuit." *Acceleration Bay LLC v. 2K Sports, Inc.*, 15 F.4th 1069, 1075 (Fed. Cir. 2021) (citation omitted).

**b. Truinject's Breach of Contract Claim Fails.**

Defendants move for summary judgment on Truinject's breach of contract claims. D.I. 830 at 2-6. Truinject asserts two categories of breach: improper disclosure of confidential information, and violation of an exclusive negotiation agreement. D.I. 846 at 1-12. For the reasons that follow, the Court **GRANTS** Defendants' motion for summary judgment on Truinject's breach of contract claims.

*i. Disclosure of Confidential Information*

During discovery, Truinject represented that its breach of contract theory relied on the unauthorized disclosure of its trade secrets. *Compare* A3268-3273[3] (disclosing sixteen identified

---

[3] References to the Appendix in Support of Defendants' Motions for Partial Summary Judgment and *Daubert* Motions (D.I. 619; D.I. 620; D.I. 621; D.I. 622; D.I. 623; D.I. 624) will be in the form of A[pg#]. References to the Supplemental Appendix in Support of Defendants' Response to Plaintiff's Counterstatements of Facts Precluding Summary Judgment (D.I. 723) shall be in the form of SA[pg#].

trade secrets) *with* A3292-98 (disclosing an identical set of sixteen pieces of confidential information).  In its earlier summary judgment ruling, the Court held that "Truinject proffer[ed] no evidence . . . that Defendants improperly used or disclosed Truinject's trade secrets."  D.I. 804 at 9.  Thus, Truinject's breach of contract theory is barred by the law of the case doctrine to the extent that Truinject's theory relies on the disclosure of the same information.  *See id.* at 10 (citing Truinject's expert's admission that there was no evidence of misappropriation or that "Galderma[] breached the confidentiality agreement and provided confidential information or trade secrets to the Chamberlain Group."); *SL Montevideo Tech., Inc. v. Eaton Aerospace, LLC*, 491 F.3d 350, 354 (8th Cir. 2007) ("A claim that a confidentiality agreement was breached by disclosure of a proprietary combination of data should require the same precision of proof as a comparable trade secret claim.").

Truinject presents various new information that it contends was also confidential information that was disclosed in violation of the parties' non-disclosure agreement.  *See* D.I. 846 at 10-12 (section titled "Truinject's Confidential Information and Trade Secrets Are Separate and Distinct.").  However, Truinject did not disclose any theory regarding confidential information other than its trade secrets in response to an interrogatory.  *See* A3292-98.  Truinject has not suggested that any failure to disclose other theories was "substantially justified or . . . harmless."  Fed. R. Civ. P. 37(c)(1).  Thus, to the extent that Truinject contends that other confidential information exists and was improperly disclosed, Truinject has waived its breach of contract arguments.  *See id.* ("If a party fails to provide information . . . the party is not allowed to use that information." ).  Truinject provides no response to this fatal issue, effectively conceding it.  *See* D.I. 846 at 10-12 (never mentioning Truinject's discovery disclosures).  Truinject merely provides the unremarkable proposition that confidential information and trade secrets are not always

8

congruent. *See id.* at 11 n.46 (citing *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 n.10 (3d

Cir. 2021)).  In general, a party may allege a breach of a confidentiality agreement that would not

constitute trade secret misappropriation.[4]   In this specific case, Truinject has not done so.

Defendants' motion for summary judgment is **GRANTED** as to Truinject's breach of contract

theories that rely on the unauthorized disclosure of confidential information.

> *ii.   Separate Alleged Breaches of the Exclusive Negotiation Agreement*

The Exclusive Negotiation Agreement ("ENA") between Truinject and Defendants makes

it a breach to

> (i) enter the market with any product or system that is substantially similar in
> functionality as the TruInject System ("Alternative System") (ii) engage in
> development of any Alternative System; or (iii) engage or participate in any
> discussions or negotiations with any entity that currently sells an Alternative
> System or is engaged in developing an Alternative System . . . .

D.I. 846, Ex. 2 § 3.  Truinject, in its complaint, alleges that Defendants breached the ENA by

engaging in the development of its Holly product before the expiration of the non-compete

provisions, under Section 3(ii) of the ENA.  D.I. 204 ¶ 454.  Truinject did not allege a breach of

Section 3(iii).  *See id.*  Nevertheless, in its opposition to Summary Judgment, Truinject alleges a

breach of Section 3(iii) by claiming that Galderma impermissibly met with competitors.  *See* D.I.

846 at 2-5.  To the extent that Truinject contends that it has a theory predicated on a theory not

pled in the complaint, "[i]it is too late now to make a breach of contract claim on an unpled theory."

*Ecolab Inc. v. Dubois Chemicals, Inc.*, No. CV 21-567-RGA, 2023 WL 7019266, at *6 (D. Del.

---

[4] For this reason, the Court at the pre-trial conference stated that its ruling did not resolve
liability for breach of contract.  D.I. 864, Ex. 11, at 12:8-9.  Having reviewed the briefing and
Truinject's disclosures, the Court is now able to determine that the Court's ruling on trade secret
misappropriation necessarily resolved Truinject's congruent breach of contract theories.

Oct. 25, 2023) (granting summary judgment against an unpled theory).  Thus, the Court **GRANTS** summary judgment for Defendants with respect to Truinject's theory that Defendants breached Section 3(iii) of the ENA.

Truinject's only remaining breach of contract theory (and its only theory that is not procedurally barred) is the contention that Truinject breached Section 3(ii) of the ENA by "engag[ing] in the development of an Alternative System, Holly."  D.I. 846 at 2.

The covenant not to compete under the ENA remained in effect until August 2015 (the "Non-Compete Period").  Truinject contends that there is a disputed material issue of fact as to whether Defendants were developing Holly during the Non-Compete Period.  D.I. 846 at 2-5.  The ENA only makes it a breach to "engage in development" of a system with "substantially similar functionality as the TruInject System."  D.I. 846, Ex. 2 § 3.  It defines the "TruInject system" as "an interactive training device consisting of a face model and smart syringe along with a proprietary software package that purports to have the functionality to provide a hands-on, simulated injection experience with feedback to facilitate repetitive, accurate needle placement." *Id.* § A.  Truinject thus needs to show both that Defendants were actively engaged in development, and that the development was of a system with substantially similar functionality as one with a face model, a smart syringe, and the software to provide a simulated injection experience with feedback.  "To 'engage' usually means to 'involve oneself' or to 'participate'—*i.e.*, to 'be active' in some way." *Syngenta Seeds, LLC v. Warner*, 2021 WL 679289, at *10 (D. Minn. Feb. 22, 2021).  "Absent an element of active present participation, any hypothetical discussions about a future business relationship—even discussions that involved the use or disclosure of [Plaintiff's] information—would not be enough." *Id.*

Truinject concedes that Defendants did not contact The Chamberlain Group (the developer of Holly), until November 2015, after the Non-Compete Period ended. D.I. 846 at 5-6 & n. 17. Nevertheless, Truinject suggests that Defendants had already begun development, and that the meeting with The Chamberlain Group was merely "part of an ongoing effort [that] began during the non-compete period to locate third parties to use Truinject's confidential information." *Id.* Truinject contends that separate meetings that Defendants held with Northeastern University ("Northeastern") and with  Dassault Systems ("Dassault") create a material issue of fact as to whether Defendants began development of Holly during the Non-Compete Period. D.I. 846 at 2-5.  It is undisputed that neither Northeastern nor Dassault ultimately developed a product for Defendants. SA9(120:3-5); A1546(34:9-12).

First, Truinject points to meetings between Galderma and Northeastern. *Id.* at 3-4. Galderma met with Northeastern on December 15, 2014 and met with Truinject on December 16, 2014. D.I. 846, Ex. 10, PTX-361 at 1; Ex. 11 at 115:5-9; Ex. 12, PTX-309.  Elizabeth Bentley testified that after Truinject and Galderma met, Scott McCrea told her that "[w]e could do this [Kate] on our own." D.I. 846, Ex. 15 at 80:6-24, 81:9-17.  An internal document at Galderma could be "fair[ly] read[]" to state that Galderma employees were talking about "a features increment in regards to Truinject" with Northeastern. D.I. 846, Ex. 7 at 135:13-19; Ex. 6, Deposition Ex. 360.   Thus, Truinject contends, Galderma engaged in development of an Alternative System within the meaning of the ENA.  A Northeastern representative indicated that the discussions with Defendants did not involve "mannequins" "artificial human heads," "a computerized display of facial anatomy," or "training future injectors." A1543-46.  That representative also stated that Northeastern has never built a "facial injection training device or simulator either for Galderma or not." *See id.*

Second, Truinject points to meetings between Galderma and Dassault Systems ("Dassault"), starting on July 11, 2015. Dassault is a developer of simulation software, and Truinject contends that Defendants believed that Dassault's experience with a "Living Heart" model would help to build a 3D skin representation. D.I. 846, Ex. 16, PTX-803; Ex. 17; Ex. 18, PTX-722; Ex. 9, PTX-807. A Dassault representative indicated that Defendants were "interested in preparing a 3D facial injection experience to train its dermatologists" and wanted Dassault to "potentially model a virtual skin injection procedure." D.I. 846, Ex. 8 at 97:18-98:9. However, the Dassault Representative also testified that the discussions did not relate to "a physical head that would be injected by the user with a physical syringe" or any "injection training device that would track the insertion of the needle in the physical head on a tablet or a computer." A1536 (110:21-111:19); SA9-10 (118:13-23; 119:7-13; 119:24-120:5; 122:7-10). Truinject provides no rebuttal to this testimony.

Even drawing all reasonable inferences in favor of Truinject, no reasonable jury could find that Defendants had begun development of an Alternative System prior to the expiration of the Non-Compete Period. Truinject contends that its allegations that "Defendants had already stolen Truinject's ideas, and they simply needed to find the right partners to bring their plot 'to work around the patents' to fruition" are supported by "the testimony of third-party witnesses, Galderma employees, and Galderma's internal documents." D.I. 845 at 5, 5 n. 16. Truinject does not cite any of this testimony, identify any of these employees, or point to these internal documents. *See id.* Indeed, Truinject never rebuts the testimony of the Dassault and Northeastern representatives who indicated that the discussions did not involve a physical head with a syringe or an injection training device. A1536; A1543-46. Truinject even concedes in its complaint that Project Holly began in November 2015, after the expiration of the Non-Compete Period. D.I. 204 ¶ 550.

12

Truinject provides exactly two pieces of evidence that development on Holly began prior to the expiration of the Non-Compete period: (1) that one Galderma employee thought that Galderma could do Kate on their own (D.I. 846, Ex. 15 at 80:6-24); and (2) that one could potentially read a document to say that Northeastern could do a "features increment" with respect to Truinject's device (D.I. 846, Ex. 6).[5] Truinject provides no evidence that Galderma actually engaged in development on an Alternative System within the Non-Compete period. At best, Truinject offers innuendo that Defendants *could* have entered *hypothetical and unconsummated* discussions with vendors about a device with *some* similarity to Kate. Because the ENA requires actual development of a system with substantial similarity, Truinject's proffered evidence is not enough to survive summary judgment with regards to breach of contract. *See Acceleration Bay*, 612 F. Supp. 3d at 418 ("Speculation is not enough to survive summary judgment").

      *iii.   Damages*

Even if there were a material dispute of fact as to breach, Truinject would still have to prove damages. *Kronenberg v. Katz*, 872 A.2d 568, 606 (Del. Ch. 2004); *Blattman v. C3 Inc.*, 846 F. App'x 149, 154 (3d Cir. 2021). The Court previously granted summary judgment of "no damages" by finding that "Truinject has not alleged harm arising from a breach of contract." D.I. 804 at 8. In its briefing related to that motion for summary judgment, Truinject conceded that, apart from the theory the Court rejected in its summary judgment opinion, that Truinject "has presented no evidence or calculation of any other form of damages relating to any of its claims." D.I. 597 ¶ 46; D.I. 676 ¶ 46. Truinject's suggestion, post-summary judgment, that it could prove

---

[5] The Court notes that Defendants met with Northeastern before meeting with Truinject, and that Truinject provides no evidence that Defendants ever discussed this "feature increment" with Northeastern.

damages from some other theory to avoid the Court's opinion thus constitutes an improper motion for reconsideration. *See generally* D.I. 832; *vMedex, Inc. v. TDS Operating, Inc.*, 2020 WL 4925512, at *7 (D. Del. Aug. 21, 2020) (plaintiff waived argument by not "address[ing] Defendants' argument[]" that plaintiff did "not allege[] any resulting injury").

Truinject also contends that, despite not pleading nominal damages, or asserting nominal damages in response to a motion for summary judgment, it can proceed to trial solely on nominal damages. "Under Delaware law, awarding nominal damages is discretionary if they are not requested." *Blattman*, 846 F. App'x at 155; *see also Cohen v. Resol. Tr.*, 107 F. App'x 287, 289-90 (3d Cir. 2004) ("court did not err in refusing to award nominal damages" when plaintiff "requested only compensatory and punitive damages in their amended complaint"). When a plaintiff "never pled a claim for nominal damages, nor asserted such a claim in discovery," courts reject "newfound claim[s] for nominal damages aris[ing] out of a failure to ultimately prove actual damages and a desire to ultimately obtain attorneys' fees*.*" *Dunkin' Donuts Inc. v. Dough Boy Mgmt., Inc.*, 2006 WL 20521, at *9-10 (D.N.J. Jan. 3, 2006); *see also Best W. Int'l v. Prime Tech Dev., L.L.C.*, 2007 WL 9734759, at *3 (C.D. Ill. June 7, 2007). "[A]n award of nominal damages and a concomitant trial on liability would be a futile exercise for all entities involved." *Palmer v. Moffat*, 2004 WL 397051, at *5 (De. Super. Ct. Feb. 27, 2004). The Court exercises its discretion to reject nominal damages. Truinject's breach of contract theory independently fails for lack of damages. The Court **GRANTS** summary judgment as to Truinject's claim for breach of contract.

### c. Truinject's DTPA Claim Fails.

Truinject asserts a claim for relief under the DTPA. Truinject asserts likelihood of confusion claims under *6 Del. C.* §§ 2532(a)(2) ("likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services"); 2532(a)(3)

14

("likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another"); and 2532(a)(12) ("any other conduct which similarly creates a likelihood of confusion or of misunderstanding."). D.I. 204 ¶¶ 653, 664. The Court has already held that Kate lacks protectable trade dress and has no "secondary meaning in the marketplace." D.I. 804 at 20. The DTPA "affords no greater protection than the Lanham Act." *Monstanto Co v. Syngenta Seeds, Inc.*, 443 F. Supp. 2d 648, 653 (D. Del. 2006). Without proof of "trade dress copying," "[Defendants] cannot be liable for unfair competition solely because of a likelihood of confusion resulting from nearly identical products in the market." *Mitchell Lane Publishers, Inc. v. Rasemas*, 2014 WL 4925150, at *8 (Del. Ch. Sept. 30, 2014). Without protectable trade dress, "any confusion was [not] created through deceptive trade practices." *Id.* at *9. Truinject provides no evidence of any confusion that has not already been resolved by the Court's summary judgment opinion. D.I. 830 at 8-9.

Truinject also asserts a disparagement claim under § 2532(a)(8), which protects against a competitor who "disparages the goods, services, or business of another by false or misleading representation of fact." D.I. 204 ¶ 664. The only instance of disparagement that Truinject identifies is a 2016 hearsay statement from a Galderma employee to an employee of Allergan that Galderma's transaction with Truinject was not going anywhere because "it isn't far enough along in development for [Galderma] to see value in it." D.I. 846 at 17 (citing Ex. 63, PTX-2415). This statement is a "personal opinion on an unverifiable matter" and is thus not actionable disparagement. *See Peloton Interactive, Inc. v. ICON Health & Fitness, Inc.*, 2021 WL 2188219, at *6-8 (D. Del. May 28, 2021). In any event, Truinject itself told the market that, in 2016, Kate was "not ready" and "did not work." D.I. 204 ¶¶ 228-29. Truinject has admitted in this lawsuit that in January 2017 Kate "could not be utilized for commercialization and, therefore, TruInject

15

had to start from scratch."   A962 ¶ 5.   Truinject has failed to carry its burden to show

disparagement.   *Smash Franchise Partners, LLC v. Kanda Holdings*, 2023 WL 4560984, at \*27

(Del. Ch. July 14, 2023) (DTPA claim failed because plaintiff "did not introduce evidence"

statement was false).

The DTPA gives no independent right to damages.   6 Del. C. § 2533(c).   Because Truinject

has no damages on its underlying claim, Truinject cannot receive damages under the DTPA.   *See*

Section II(b)(iii), *supra*.   Defendants' Motion for Summary Judgment is **GRANTED** as to

Truinject's DTPA claim.

### d.   Truinject's UCL Claim Fails.

Truinject asserts a claim for relief under the UCL, contending that Defendants have

engaged in "unfair" business practices.   Cal. Bus. & Prof. Code § 17200; *see* D.I. 846 at 17 n.65

("Truinject is pursuing its UCL claim under the unfair prong of the UCL.").   The California

Uniform Trade Secrets Act ("CUTSA") "supersedes … [UCL] claims[] based on the same nucleus

of facts as trade secret misappropriation," *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d

868, 888 (N.D. Cal. 2018), or "misappropriation of confidential information, whether or not that

information meets the statutory definition of a trade secret." *NetApp, Inc. v. Nimble Storage, Inc.*,

2015 WL 400251, at \*16, \*20 (N.D. Cal. Jan. 29, 2015).   UCL claims are thus pre-empted where

the "gravamen of the wrongful conduct asserted" is misuse of trade secrets or confidential

information.   *Gems v. Diamond Imps., Inc.*, 2016 WL 6902804, at \*3-4 (N.D. Cal. 2016).   The

Court already has held that the UCL claim is pre-empted to the extent it is "grounded in the same

facts as the trade secret misappropriation claim."   D.I. 250 at 15.   The claim let the UCL claim

proceed on trade dress infringement, *id.* at 14, which it has also now rejected.   D.I. 804 at 21.

Truinject's only rebuttal to the contention that its UCL claim has been largely pre-empted is the

uncited proposition that the "law cannot serve as a basis for preemption after Galderma's summary judgment motion on trade secrets was already granted by this Court." D.I. 846 at 17 n. 65. This proposition is wrong. *See MedioStream, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095, 1115 (N.D. Cal. 2012) (denying a UCL claim as pre-empted after dismissing a CUTSA claim). Truinject's UCL claim is pre-empted to the extent it relies on unauthorized use of confidential information. *See Novation Sols., Inc. v. Issuance Inc.*, 2023 WL 5505908, at *9 (C.D. Cal. June 27, 2023) (finding a UCL claim pre-empted when the plaintiff alleged that the defendant "deceived [the plaintiff] with false misrepresentations to enter into a strategic collaboration with [the plaintiff] in order to gain access to [its] Platform" and used confidential information "to directly compete … and divert business away from [the plaintiff].").

Truinject also alleges that it has a UCL claim because Defendants made allegedly disparaging and misleading statements. *See* D.I. 846 at 18. A disparaging statement can give rise to UCL liability if it was "(1) clearly false, (2) clearly material, (3) clearly likely to induce reasonable reliance, (4) made to buyers without knowledge of the subject matter, (5) continued for prolonged periods, and (6) not readily susceptible of neutralization." *Oracle Int'l Corp. v. Rimini St., Inc.*, 2023 WL 4706127, at *89 (D. Nev. July 24, 2023) (quoting *Am. Pro. Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Pro. Publ'ns*, 108 F.3d 1147, 1152 (9th Cir. 1997)); *In re Apple iPod iTunes Antitrust Litig.*, 796 F. Supp. 2d 1137, 1146-47 (N.D. Cal. 2011).

Truinject accuses two sets of statements of being disparaging or misleading. First, Truinject identifies the same statement from a Galderma employee to an Allergan employee that Truinject's product was "not far enough along in development for us to see value in it." This is a statement made to a competitor, not a statement "made to buyers without knowledge of the subject matter." *Oracle Int'l Corp.*, 2023 WL 5706127, at *89. Second, Truinject alleges that Galderma

made "misleading statements to consumers of Kate (injectors and KOLs) that Holly was independently developed by Galderma." D.I. 846 at 19. The only evidence in support of this assertion is a text message from Dr. Waldorf, who saw Holly at a conference and stated that "galderma took this from Truinject." A2226. As the Court noted in its initial summary judgment opinion, this was "[e]vidence that consumers could tell that the products were different" and Truinject never explains how general statements of independent development were disparaging, misleading, or otherwise actionable under the UCL. D.I. 804 at 19. Truinject never demonstrates that any particular statement was material, could not be neutralized, and was likely to induce reasonable reliance. *Oracle Int'l Corp.*, 2023 WL 5706127, at *89. Truinject has not proffered sufficient evidence to survive summary judgment on its UCL claim. Thus, Defendants' Motion for Summary Judgment is **GRANTED** as to Truinject's UCL claim.

\* \* \*

WHEREFORE, at Wilmington this 13th day of September, 2024, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion to Strike (D.I. 803) is **GRANTED-IN-PART** and **DENIED-IN-PART** as set forth herein.

2. Defendants' Motion for Summary Judgment on Plaintiff's Remaining Claims (D.I. 829) is **GRANTED**.

3. Defendant's Motion to Exclude Certain Expert Testimony of Mr. Saul Solomon (D.I. 593) is granted-in-part and denied-in-part as described herein.

4. Plaintiff's Motion for Leave to Serve a Supplemental Report of Plaintiff's Damages Expert (D.I. 832), Defendants' Motion for Leave to File a Sur-Reply in Opposition to

Plaintiff's Motion for Leave (D.I. 863), and Plaintiff's Motion to Set a Trial Date (D.I. 865) are **DENIED AS MOOT**.

5.  By no later than September 20, 2024, the parties shall meet and confer and submit a joint status report setting out what issues remain for resolution by the Court.

Because this opinion is filed under seal, the parties shall meet and confer and, no later than September 20, 2024, submit a joint proposed redacted version. In the absence of a timely request compliant with applicable standards, the Court will unseal the entire Order.

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

19